IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GLORIA DAVIS, <br><br> v. <br><br> HOME DEPOT U.S.A., INC. | Civil Action No. CCB-21-348 |

### MEMORANDUM

The defendant Home Depot U.S.A., Inc., moves for summary judgment in this single-count negligence case filed by the plaintiff, Gloria Davis. (ECF 34, Def.'s Mot. for Summ. J.). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the court will Deny the motion.

### BACKGROUND

Home Depot is a multinational home improvement retailer known for helping "Doers Get More Done."[1] This case involves an incident that occurred when one such "Doer," Gloria Davis, visited the store to collect a set of pre-ordered cabinets, but left with a concussion after a box of moldings fell and struck her head. Ms. Davis sued Home Depot for negligence. With discovery now complete, Home Depot moves for summary judgment. An account of the incident follows.

On December 7, 2018, Gloria Davis and her husband, Ronald Davis, traveled to a Home Depot in Glen Burnie, Maryland, to pick up a set of kitchen cabinets they had pre-ordered. (ECF 41-2 at 43:12-14, 44:13-16, Gloria Davis Dep.). The Davis's parked their pickup truck in a designated loading zone before entering the store. (*Id.* at 46:11-21). Once inside, the Davis's asked

---

[1] *The Home is Where Our Story Begins*, Home Depot, https://corporate.homedepot.com/page/home-where-our-story-begins.

1

a customer service agent for help loading the pre-ordered cabinets into their vehicle. (*Id.* at 47:6-14).

Two Home Depot employees, Jonathan Boyd and Michael Seager, were dispatched to help load the Davis's cabinets into a trailer hitched to the back of the Davis's pickup truck. (ECF 41-4 at 11:12-16, 12:13-16, Jonathan Boyd Dep.). Both Mr. Boyd and Mr. Seager were employed at Home Depot as "Pro-Loaders," (*id.* at 8:19-20), a position dedicated to helping customers who need assistance loading a "truck, flatbed, trailer or shop van" and staffed by employees with "the skills, equipment and knowhow to take loading concerns off [customers'] hands."[2]

The Home Depot employees delivered the Davis's order to the loading zone in boxes stacked on three large pallets. (ECF 41-2 at 47:11-12). A thick layer of plastic shrink wrap secured the boxes on each pallet. (*Id.*). Before loading the order into the Davis's trailer, the employees deposited the pallets, one at a time, at the trailer's base, where Mr. Davis had positioned a ramp leading into the trailer to facilitate the loading process. (*See generally* ECF 34 Ex. C, CCTV Exterior Right).

Loading the first pallet went off without a hitch. Using a utility cart, a Home Depot employee delivered the first pallet to the base of the ramp leading to the Davis's trailer. (*Id.* at 10:30-10:45). At this point, Mr. Boyd began cutting away the shrink wrap securing the boxes on the pallet, but he left a portion wrapped around the upper level of the load to hold the boxes in place. (*Id.* at 11:00-11:40). With the shrink wrap partially undone, Mr. Boyd and Mr. Davis started removing boxes from the load while the remaining shrink wrap continued to secure it. First, Mr. Davis removed a long, rectangular box bound vertically to the order. (*Id.* at 12:18-12:30). Next, Mr. Boyd set aside another large rectangular box from the side of the stack. (*Id.* at 12:38-12:50).

---

[2] *Pro Loaders*, Home Depot, https://www.homedepot.com/c/proloaders.

With these boxes safely unpacked, Mr. Davis circled the pallet's perimeter, positioning himself on the parking lot side of the pallet across from Mr. Boyd who remained on the store side. (*Id.* at 13:00-13:20). The truck occupied the side of the pallet to Mr. Davis's right, and he had just traversed the side to his left, giving Mr. Davis and Mr. Boyd assurance that no bystanders were close enough to be struck by a falling box. (*Id.*). Still, Mr. Boyd checked the truck-side of the pallet and appeared to be communicating with Mr. Davis as they prepared to sever the shrink wrap. (*Id.* at 13:15-13:25). Mr. Boyd also placed a reinforcing hand on the upper portion of the stack to hold it steady as Mr. Davis prepared to finish removing the shrink wrap. (*Id.* at 13:20-13:28). Only at this point did Mr. Davis carefully undo the final piece of shrink wrap holding the load together. (*Id.* at 13:30-13:45). Once he did, the pair methodically carried the boxes into the trailer without incident. (*Id.* at 15:30-20:03).

  Things did not go as well with the second pallet. As with the first pallet, the Home Depot employees delivered the second pallet to the base of the ramp leading to the Davis's trailer. (*Id.* at 20:28-20:54). Again, the shrink wrap was already partially opened, with only a final upper portion remaining connected and holding the stack of boxes in place. (*Id.*). This time, however, Mr. Boyd and Mr. Davis did not secure the pallet's perimeter before severing the shrink wrap. (*Id.* at 20:50-21:08). Instead, with Mr. Davis behind him, Mr. Boyd casually split the final strand of shrink wrap without conducting a safety check of any of the pallet's sides or using a hand to hold the uppermost boxes in place. (*Id.*). As he did this, Ms. Davis was just a few feet to his right verifying SKU's on her order from the store-side of the stack and directly in the zone of danger surrounding the pallet. (*Id.*). As soon as Mr. Boyd broke the shrink wrap seal, a long rectangular box filled with moldings,

which had been tied vertically at the top of the parking lot side of the stack, fell to the store side, descending across the length of the pallet and landing on Ms. Davis's head. (*Id.* at 20:59-21:08).[3]

When the box connected with Ms. Davis's head, she cried out in pain and immediately retreated to the side of her truck where her husband tended to her as the Home Depot employees continued loading the trailer. (*Id.* at 21:18-25:21; ECF 41-2 at 49:15). Once the cabinets were fully loaded, Mr. Davis brought his wife to a WiseCare Urgent Care Center, where they were redirected to the emergency room at University of Maryland Baltimore Washington Medical Center because the WiseCare clinic did not treat head injuries. (ECF 41-2 at 52:10-18, 79:12-15). At Baltimore Washington, Ms. Davis received a CT scan and was diagnosed with a concussion and a traumatic brain injury. (*Id.* at 81:1-5).

Ms. Davis sued Home Depot in February 2021, alleging a single count of negligence and seeking compensation for her pain and suffering, medical expenses, and lost time at work. (ECF 1, Compl.). She amended her complaint one month later. (ECF 6, Am. Compl.). The parties conducted discovery, including interrogatories, depositions, and file production that included Home Depot CCTV camera footage of the incident. With discovery complete, Home Depot now moves for summary judgment. (ECF 34). For the following reasons, the court will Deny the motion.

**LEGAL STANDARD**

Home Depot moves for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any

---

[3] Ms. Davis testified in her deposition that she was checking the SKU's on her order at the instruction of Home Depot employees. (ECF 41-2 at 47:18-48:11). Home Depot disputes this. (ECF 34-2 at 3 n.1, Def.'s Mem. in Supp. of Mot. for Summ. J.). The parties agree, however, that Home Depot did not specifically instruct her to verify the SKU's *while* the boxes were still on the pallet. (ECF 41-2 at 62:9-21).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, the court views the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draws all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015).

## ANALYSIS

### I. Negligence

Under Maryland law, a plaintiff asserting a negligence claim must demonstrate four elements: (1) duty; (2) breach; (3) injury; and (4) causation. *See Anderson v. Home Depot U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *6 (D. Md. May 16, 2017) (quoting *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004)). A breach of duty occurs when a person acts without reasonable care, in other words, without the "caution, attention or skill a reasonable person would use under similar circumstances." *Walker v. Nat'l R.R. Passenger Corp.*, 703 F. Supp. 2d 495, 502 (D. Md. 2010) (citation omitted). Even where the evidence "tending to prove negligence" is "slight," so long as there is "any evidence" that is "legally sufficient" to support the claim, the issue must be "left to the jury." *Hill v. Wilson*, 760 A.2d 294, 305 (Md. 2000) (emphasis omitted) (citations omitted). "Under the doctrine of *respondeat superior*, an employer is vicariously liable for a tort committed by its employee while acting within

the scope of [their] employment." *Women First OB/GYN Assocs., LLC v. Harris*, 161 A.3d 28, 34 (Md. 2017). Here, Home Depot does not dispute the elements of injury or causation, nor does it disclaim liability for the actions of its employees. The dispute is limited to whether Home Depot, through its employees, breached a duty to Ms. Davis. Viewing the evidence in the light most favorable to Ms. Davis, the court concludes a reasonable jury could find it did.

The most relevant breach of duty here occurred when Mr. Boyd, one of Home Depot's Pro Loaders, severed a shrink wrap binding which caused a container of moldings to fall on Ms. Davis's head.[4] According to Home Depot's website, Pro Loaders like Mr. Boyd are trained with "the skills, equipment and knowhow to take loading concerns off [customers'] hands."[5] Home Depot maintains that "the risk of ripping shrink wrap from a pallet, which was securing boxes of various shapes and sizes, poses an obvious risk that the boxes will become unsecure and fall." (ECF 34-2 at 11). Yet the video evidence depicts Mr. Boyd severing the final connective shrink wrap without first surveying its perimeter to ensure that, if the "obvious risk" of falling boxes should indeed occur, there would be no bystanders in striking distance. (ECF 34 Ex. C at 20:50-21:08).

This breach of duty is underscored by the contrast between Mr. Boyd's care in unloading the first pallet of boxes and his hasty approach to the second. The video footage shows Mr. Boyd and Mr. Davis unloading the first pallet together. They begin by unloading the most precarious boxes while leaving some shrink wrap in place to secure the remainder of the load. (*Id.* at 12:18-12:30). When they ultimately remove the shrink wrap, Mr. Boyd and Mr. Davis are facing each

---

[4] The parties dispute whether it was Mr. Boyd's severance of the shrink wrap, or Ms. Davis's pulling on it, that caused the moldings to fall. At this stage, the court must construe the disputed facts in Ms. Davis's favor, and indeed, the video evidence is best viewed as corroborating her version of events.

[5] *Pro Loaders*, Home Depot, https://www.homedepot.com/c/proloaders.

6

other from opposite ends of the pallet, leaving only two sides unattended. (*Id.* at 13:00-13:20). Mr. Davis had just checked one of the unmanned sides and Mr. Boyd visibly checks the other. (*Id.* at 13:00-13:25). The pair also appear to be communicating with each other as they complete the task, and Mr. Boyd even places a hand on the upper portion of the stack to hold it steady as Mr. Davis prepares to sever the final piece of shrink wrap. (*Id.* at 13:00-13:28).

When the second pallet is delivered, however, Mr. Boyd breaks the shrink wrap seal almost immediately. (*Id.* at 20:28-21:08). He does not unload any of the upper-level boxes before removing the shrink wrap, and he seeks no assistance in holding the load steady as he does so. (*Id.*). Mr. Davis is behind him at this point, leaving three of the pallet's four sides open and unprotected. (*Id.*). Nonetheless, unlike with the first pallet, Mr. Boyd fails to check any of the pallet's other three sides, which, due to his proximity to the pallet and the height and width of the stack of boxes, seem to be out of his field of view. (*Id.*). Had he checked the perimeter of the pallet he would have discovered Ms. Davis standing just a few feet to his right, directly in the zone of "obvious" danger when Mr. Boyd undid the shrink wrap. (*See id.*).

Confronted with this evidence, Home Depot contends that it was Ms. Davis, not Mr. Boyd, who severed the shrink wrap holding in place the box that ultimately struck her. The video evidence, however, tells a different story. Although Ms. Davis approached the pallet and moved a sheet of shrink wrap aside at about the time the box of moldings came loose, the video appears to indicate that it was Mr. Boyd detaching the shrink wrap lining the top layer of boxes—not Ms. Davis swiping aside shrink wrap on the lower portion of the load—that caused the case of moldings to fall. (*Id.* at 20:28-21:08). At minimum, there is a genuine dispute of fact as to who set the box free. A reasonable jury could conclude Mr. Boyd dislodged the box, and that his failure to check the zone he knew or should have known would be in danger when he undid the shrink wrap was

7

unreasonable under the circumstances. Construing the factual disputes and all reasonable inferences in Ms. Davis's favor, the court concludes a reasonable jury could find Mr. Boyd breached his duty of care to Ms. Davis. With the remaining liability elements undisputed, a reasonable jury could find Home Depot negligent.

**II. Contributory Negligence**

As an alternative to its argument that Ms. Davis cannot establish a negligence claim, Home Depot raises two affirmative defenses: contributory negligence and assumption of risk. Contributory negligence is a complete bar to recovery in Maryland and occurs when the plaintiff fails to "observe ordinary care for their own safety." *Berkenfeld v. Lenet*, 921 F.3d 148, 153 (4th Cir. 2019) (quoting *Balt. Gas & Elec. Co. v. Flippo*, 705 A.2d 1144, 1155 (Md. 1998)). Maryland courts recognize that completely barring recovery in contributory negligence cases is "harsh justice," and thus apply "a very restrictive rule about taking cases from the jury in negligence actions." *Id.* at 153-54 (quoting *Hill*, 760 A.2d at 305). As a result, contributory negligence is an issue for the jury unless, drawing all factual disputes and reasonable inferences in the plaintiff's favor, there is "*no room for difference of opinion*" among reasonable minds that the plaintiff failed to exercise ordinary care. *Id.* at 154 (quoting *Balt. Gas & Elec. Co.*, 705 A.2d at 1155). In applying this standard, courts must adopt a "presumption that the plaintiff exercised ordinary care for [her own] safety," and recall that "an error of judgment . . . alone does not make the act negligent if an ordinarily prudent person may have made the same error." *Id.* (first quoting *Hill*, 760 A.2d at 305; and then quoting *Faith v. Keefer*, 736 A.2d 422, 444 (Md. 1999)).

Home Depot contends that Ms. Davis was contributorily negligent because her "own actions helped to cause [her] own injuries." (ECF 34-2 at 8). In its view, Ms. Davis's contact with the shrink wrap was "the only action that caused and/or contributed to the box falling," and Ms.

Davis should have known that "ripping the shrink wrap away from the pallet would cause the boxes to become unsecure." (*Id.* at 9-10). As the court has already explained, however, the best view of the evidence is that Mr. Boyd—not Ms. Davis—severed the shrink wrap and caused the box to fall. There is at least "room for difference of opinion" as to who dislodged the box, so the court must leave it to the jury to resolve the question. *See Berkenfeld*, 921 F.3d at 154. Home Depot is not entitled to judgment as a matter of law on the grounds of contributory negligence.[6]

### III. Assumption of Risk

Along with its contributory negligence defense, Home Depot argues Ms. Davis assumed the risk of the injuries she sustained. A plaintiff assumes the risk of their actions when they intentionally and voluntarily expose themselves "to a known danger." *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212, 223 (Md. 2011) (quoting *Crews v. Hollenbach*, 751 A.2d 481, 488 (Md. 2000)). To mount a successful assumption of risk defense, "the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *Id.* at 224 (quoting *ADM P'ship v. Martin*, 702 A.2d 730, 734 (Md. 1997)). Assumption of risk differs from contributory negligence in that assumption of risk is a *subjective* standard involving voluntary acceptance of a known danger, whereas contributory negligence is an *objective standard* involving deviation from a reasonable standard of care. *Id.* at 224-26. Like contributory negligence, assumption of risk is a complete bar to recovery that "is ordinarily left to the jury to resolve." *Id.* at 224, 226. And like its contributory negligence defense, Home Depot's assumption of risk defense must also fail at this stage.

---

[6] Home Depot does not argue that, notwithstanding whoever caused the box to fall, Ms. Davis's mere proximity to the box was negligent. In any case, under these circumstances the court deems it reasonable for a customer to assist an employee with the unloading of an order absent instruction to the contrary, and indeed it is consistent with Home Depot's own policies. (ECF 41-4 at 21:6-22:4).

Home Depot argues Ms. Davis assumed the risk of injury because "the dangers posed by pulling shrink wrap from pallets, which [the] shrink wrap was in place to secure . . . is an open and obvious danger." (ECF 34-2 at 13). So, like its contributory negligence defense, Home Depot grounds its assumption of risk defense in the risk of "*pulling shrink wrap*" off of pallets, not in the risk of maintaining proximity to the pallet while others removed the shrink wrap from it. *Cf. supra*, Note 6. Thus, Home Depot's assumption of risk defense fails for the same reasons as its contributory negligence defense: a reasonable jury could conclude Ms. Davis did not pull the shrink wrap from the pallet, and correspondingly that she could not have assumed the risk of doing so. Home Depot is not entitled to judgment as a matter of law based on assumption of risk.

## CONCLUSION

In sum, drawing all factual disputes and reasonable inferences in Ms. Davis's favor, a reasonable jury could conclude negligence attributable to Home Depot caused Ms. Davis's injuries, and that Home Depot is not relieved of liability under a theory of contributory negligence or assumption of risk. The court will Deny Home Depot's motion for summary judgment.

A separate order follows.

November 3, 2022                                       /s/
Date                                                                Catherine C. Blake
                                                                        United States District Judge